# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| ONE HOUR AIR CONDITIONING FRANCHISING SPE LLC, | Case No. 1:23-cv-739 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ZUBIE AIR, INC., and EVEL L. ZUBIATE, | |
| Defendants. | |

Defendant Zubie Air, Inc. is a franchisee of Plaintiff One Hour Air Conditioning SPE LLC. One Hour has attempted to exercise its audit rights under Zubie Air, Inc.'s franchise agreements with One Hour, but Zubie Air, Inc. has unjustifiably failed to comply with these requests. One Hour brings this action for breach of contract, seeking to enforce its rights under the franchise agreements and recover damages from Defendants' breaches of the franchise agreements.

## THE PARTIES

1. Plaintiff One Hour Air Conditioning Franchising SPE LLC ("One Hour") is a Delaware limited liability company with its principal place of business in Columbia, Maryland. One Hour is engaged in the business of franchising independent businesspersons to operate One Hour Heating & Air Conditioning businesses. For that purpose, One Hour has developed and owns a distinctive business format and system and related standards, specifications, and procedures for providing residential air conditioning and heating services, including indoor air quality services, maintenance, repairs, equipment replacement, and other related services.

2.      One Hour's sole member is AB Assetco LLC, a Delaware limited liability company with its principal place of business in Columbia Maryland.

3.      Defendant Zubie Air, Inc. is a Texas corporation, with its principal place of business at 13111 Look Out Ridge, San Antonio, Texas 78233.

4.      Defendant Evel L. Zubiate is a natural person and Texas citizen, residing in San Antonio, Texas. Defendant Zubiate is the President of Zubie Air, Inc. and personally guaranteed its obligations under its franchise agreements with One Hour pursuant to Owner's Guaranties attached to each.

5.      Pursuant to the Owner's Guaranties, Zubiate is bound to the obligations under the Franchise Agreements to the same extent as Zubie Air, Inc., and thus the two are collectively referred to herein as "Zubiate."

### JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interests and costs, and no Defendant shares a state of citizenship with One Hour. As explained more fully below, Defendants have engaged in or been affiliated with a business that operates in direction competition with their One Hour franchises, servicing more than 20,000 customers, and causing One Hour to sustain damages, the precise amount of which is unknown but that exceed $75,000. Additionally, under the parties' franchise agreements, Defendants are required to reimburse One Hour for the attorneys' fees and costs incurred in enforcing the Agreements.

7.      This Court has *in personam* jurisdiction over both Defendants because Defendants agreed under the franchise agreements that the United States District Court for the county and state where One Hour has its principal place of business at the time the action is commenced (Maryland)

shall be the venue and exclusive forum in which to adjudicate any case or controversy arising from or relating to the agreements, and each Defendant irrevocably submitted to the jurisdiction of such Court and waived any objection each may have to either the jurisdiction or venue of such Court.

## **BACKGROUND FACTS**

8.      Plaintiff One Hour is the franchisor of the One Hour Heating & Air Conditioning businesses and the owner and developer of the System that is the center of the services offered by those businesses.

9.      Zubie Air, Inc. executed four separate franchise agreements with One Hour. Evel Zubiate executed a personal guarantee in connection with each franchise agreement, agreeing to be personally bound by and liable for any obligations thereunder. Because the contractual provisions of the franchise agreements are substantially the same, they are collectively referred to as the "Franchise Agreements" unless noted otherwise.

10.     Zubie Air, Inc. entered into a franchise agreement with One Hour on March 13, 2012, as amended, for a term of ten years.[1] A true and correct copy of this franchise agreement (Franchise Agreement 1) is attached as **Exhibit 1**. Franchise Agreement 1 gave Zubiate the right to operate a One Hour franchised business for the territory OH0234 in the North San Antonio, Texas area.

11.     Zubie Air, Inc. entered into another Franchise Agreement with One Hour on March 13, 2012, for a term of ten years. A true and correct copy of this franchise agreement (Franchise Agreement 2) is attached as **Exhibit 2**. Franchise Agreement 2 gave Zubiate the right to operate a One Hour franchised business for the territory OH0329 in the New Braunfels, Texas area.

---

[1] While One Hour Air Conditioning Franchising, LLC is the signatory to the Franchise Agreements, its rights, interests, and obligations under the Franchise Agreements have since been acquired by Plaintiff One Hour Air Conditioning Franchising SPE LLC.

12.     Zubie Air, Inc. entered into a franchise agreement with One Hour on November 29, 2012, for a term of ten years. A true and correct copy of this franchise agreement (Franchise Agreement 3) is attached as **Exhibit 3**. Franchise Agreement 3 gave Zubiate the right to operate a One Hour franchised business for the territory OH0340 in the Helotes, Texas area.

13.     Zubie Air, Inc. entered into a franchise agreement with One Hour on June 14, 2023, for a term of ten years, due to expire by its terms on June 13, 2023. A true and correct copy of this franchise agreement (Franchise Agreement 4) is attached as **Exhibit 4**. Franchise Agreement 4 gave Zubiate the right to operate a One Hour franchised business for the territory OH0064 in the San Angelo, Texas area.

### The Parties' Rights and Obligations Under the Franchise Agreements

14.     Each Franchise Agreement granted Zubiate a set of territories within which it was permitted to own and operate a One Hour Heating & Air Conditioning business and to use the One Hour Heating & Air Conditioning Marks and Systems.

15.     One Hour provides each of its franchisees with a set of manuals and guidelines (collectively, the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a One Hour Heating & Air Conditioning business.

16.     One Hour also provides its franchisees, its franchisees' owners, and its franchisees' senior managers with training courses, programs, and materials regarding their operational standards, in addition to a Center for Education and Performance curriculum that can be used by franchisees as an ongoing resource to train employees on and review the concepts found in the Manuals.

17.     In exchange for the right to operate a One Hour Heating & Air Conditioning business under the Franchise Agreement, Zubiate agreed to pay One Hour a semi-monthly

Continuing Franchise Fee. Under Franchise Agreements 1 and 2, dated March 13, 2012, the Continuing Franchise Fee due is equal to a percentage of Net Sales, determined as follows: three percent (3%) of Net Sales for the first year of the Franchise Agreement, four percent (4%) of Net Sales for the second year of the Franchise Agreement, and five percent (5%) of Net Sales thereafter for the remainder of the term of the Franchise Agreement. (Exhibit 1, at 1).

18.     Under the November 29, 2012 Franchise Agreement, Zubiate agreed to pay One Hour a semi-monthly Continuing Franchise Fee of five percent of Net Sales for the entire term of the Franchise Agreement, commencing 90 days after the effective date. (Exhibit 2, at 13 ¶ 8.3). The minimum continuing Franchise Fee was established as $1,500 per month. (*Id.*).

19.     Under the June 14, 2013 Franchise Agreement, Zubiate Agreed to pay a semi-monthly Continuing Franchise Fee of five percent of Net Sales for the term of the Franchise Agreement, commencing on the first month following the effective date. (Exhibit 3, at 8; Exhibit 3, at 30, § 8.5).

20.     Zubiate also agreed to pay One Hour a semi-monthly Marketing Fund Contribution in the amount designated by One Hour, but not to exceed four percent (4%) of Net Sales. (Franchise Agreements § 8.4).

21.     Net Sales is defined under the Franchise Agreements as

(A) all sales and revenue (and all other income of every kind and nature) related to, derived from, or originating from the Franchised Business whether within or outside the Territory, including proceeds of any business interruption insurance policies; (B) all sales and revenues from the sale of commercial [HVAC or plumbing] products and services by Franchisee (whether or not authorized by Section 14.1 of this Agreement); and (C) all sales and revenues deemed to be Net Sales as provided in Section 9.1, less (i) the amount of sales tax or similar receipts which, by law, are chargeable to customers, if such taxes are separately stated when the customer is charged and if such taxes are paid to the appropriate taxing authority; (ii) any bona fide refunds, rebates or discounts granted to customers in the ordinary course of business; (iii) any bona fide and reasonable payments made in the ordinary course of business to unaffiliated subcontractors who perform

services unrelated to Franchisee's core business and at Franchisee's customer's premises; and (iv) any reasonable and customary job service permit fees paid to governmental entities if such permit fees are properly documented and if such permit fees are paid to the appropriate governmental entity.

(Franchise Agreements § 8.5).

22.     The Franchise Agreements obligate Zubiate to maintain and preserve full, complete, and accurate books, records, and accounts relating to the conduct and operation of the Franchised Business. (Franchise Agreements § 9.1). Section 9.1 further provides that if Zubiate "operates any business other than the Franchised Business, Franchisee will keep books, records and accounts of this other business (the '**Other Business Records**') separate and distinct from the books, records and accounts of the Franchised Business (the '**Franchised Business Records**'), failing which the revenues received by Franchisee from this other business will be deemed for all purposes, including the calculation of and payment of Continuing Franchise Fees, to be revenues attributable to the Franchised Business." (*Id.*).

23.     Section 9.4 of the Franchise Agreements provide One Hour with the right to perform an audit of the franchised business:

> One Hour, or its authorized agents and representatives, has the right during business hours, but without prior notice to Franchisee, to inspect the following operations and material to ascertain that Franchisee is operating the Franchised Business in accordance with the System and the terms of this Agreement: (A) all aspects of the operation of the Franchised Business at the Approved Location; (B) all Franchised Business Records; (C) Other Business Records (if any); and (D) all accounting and other records, books of account, tax returns and other documents and materials in the possession of or under the control of Franchisee relating to the Franchised Business, Franchisee, and/or the subject matter and terms of this Agreement, including, without limitation, all records of Franchisee required to be maintained under applicable law.

(Franchise Agreements § 9.4).

24.     Section 9.4 further provides that, in the event that One Hour's inspection reveals a discrepancy which has resulted in the underpayment of any fee, "Franchisee shall promptly pay

the underpayment, and if the underpayment of any fee shows a discrepancy of more than three percent (3%) as compared to Franchisee's reported Net Sales for any period audited, Franchisee shall promptly pay the underpayment and reimburse One Hour upon receipt of an invoice for all expenses associated with the inspection." (Franchise Agreements § 9.4).

25.     Section 7.1.R of the Franchise Agreements requires Zubiate to submit the information and reports required by Section 9.3 and permit One Hour to access its data as provided in Sections 9.1, 9.2, and 9.4.

26.     Under Section 7.1.W of the Franchise Agreements, Zubiate "agree[d] not to use or permit to be used any part of the System in connection with any commercial business in which Franchisee has an interest, direct or otherwise, other than the Franchised Business."

27.      Zubiate further agreed, pursuant to Section 14.1, that during the entire term of the Franchise Agreements it will not own or be involved with a Competitive Business, defined as a business that offers residential air conditioning and heating products and services competitive with or similar to those offered by One Hour, its affiliates, its franchisees or its licensees. Zubiate further agreed that it would not own or be involved with any Competitive Business for a period of 24 months after termination, expiration, or Transfer of the Agreement. (Franchise Agreements § 14.2).

28.     Zubiate acknowledged that the rights granted under the Franchise Agreements were personal to Zubiate, and agreed that Zubiate would not sell, divide, encumber, assign, transfer, or sub-license any part of the Franchise Agreements without the prior written consent of One Hour. (Franchise Agreements § 15.2).

29.     Pursuant to Section 16.2(D) of the Franchise Agreements, Zubiate shall be deemed in default, and One Hour, at its option, may terminate the Agreement if Zubiate is in default of any

obligations contained in the Agreement and fails to cure such default within thirty days after receiving notice.

30.     Section 18.9 of Franchise Agreement 1 and Franchise Agreement 2 provides that the prevailing party in any litigation arising out of or relating to the Agreement will be entitled to recover from the other party all damages, costs, and expenses, including court costs and reasonable attorneys' fees, incurred by the prevailing party in successfully enforcing any provision of the Agreement.

### One Hour's Audit Requests and Zubiate's Defaults

31.     Without the consent of One Hour, Zubiate's franchised business became affiliated with, merged with, or was acquired by a competing business called Elmer's Home Services. Elmer's Home Services has advertised its business as Elmer's One Hour Heating and Air Conditioning, despite having no agreement with One Hour and no right to use One Hour's Marks or System.

32.     Since the unauthorized transfer or acquisition, Elmer's has advertised that it has "proudly served over 20,000 customers." The sales to Elmer's customers were prohibited by the covenants not to compete contained in Zubiate's Franchise Agreements, should have been reported to One Hour as Net Sales, and Zubiate should have paid royalties and marketing fund fees based on these Net Sales. The amount of royalties and fees owed on those sales is unknown, but it exceeds $75,000.  Additionally, this conduct makes it likely that the sales of Zubiate's One Hour franchises also have been underreported to One Hour, and royalties and marketing fund fees would be owed on those sales as well.

33.     In order to determine the extent to which Defendants underreported their sales to One Hour and the monies owed to One Hour by Defendants, One Hour formally demanded an

audit of Zubiate's business on February 28, 2022, pursuant to Section 9.4 of the Franchise Agreements. A true and correct copy of this demand is attached as **Exhibit 5**.

34.     Zubiate failed to permit One Hour to conduct an audit as requested in the February 28, 2022 demand.

35.     On October 4, 2022, One Hour provided Zubiate with a Default Notice for Zubiate's failure to comply with its request for a financial audit. A true and correct copy of this Default Notice is attached as **Exhibit 6**. One Hour provided Zubiate with the opportunity to cure the default by agreeing to comply with the audit requirements and actively engaging in the audit process within thirty days after receipt of the Default Notice.

36.     Zubiate failed to cure the default within 30 days of receiving the October 4, 2022 Default Notice.

37.     On December 23, 2022, counsel for One Hour sent a letter to Zubiate to secure compliance with the October 4, 2022 Default Notice. A true and correct copy of this letter is attached as **Exhibit 7**. Counsel for One Hour warned Zubiate that, if he failed to comply, One Hour would file a lawsuit against Zubiate to enforce the obligations under the Franchise Agreements.

38.     Counsel for Zubiate contacted One Hour about the audit demand, but Zubiate failed to cure the default and cooperate with the audit demand.

39.     On January 26, 2023, One Hour sent Zubiate another demand for an audit of the franchised business, requesting information for the period January 1, 2019—December 32, 2022. A true and correct copy of this demand letter is attached as **Exhibit 8**. In this demand, One Hour noted that additional information may be required as it continues to review the documentation requested.

40.     To date, Zubiate has not complied with any of One Hour's demands for an audit.

## COUNT ONE
### Breach of Contract – Failure to Comply with Audit

41.     One Hour incorporates by reference the preceding paragraphs as if fully set forth herein.

42.     The Franchise Agreements between One Hour and Zubiate are valid and enforceable contracts.

43.     One Hour performed all conditions precedent necessary to secure Zubiate's performance under the Franchise Agreements.

44.     Zubiate has breached the Franchise Agreements by failing to comply with One Hour's demand for an audit of the franchised business as required by the Franchise Agreements and has failed to cure these breaches following receipt of a Notice to Cure.

45.     One Hour has been damaged by Zubiate's breach of the Franchise Agreements in an amount exceeding $75,000, exclusive of interest, costs, and attorneys' fees with the precise amount to be determined at trial.

46.     Because the precise extent of damages for Zubiate's breach of the Franchise Agreements in not readily quantifiable, there is no adequate remedy at law and One Hour seeks specific performance of Zubiate's obligations under the Franchise Agreement to permit One Hour to conduct an audit of the franchised business.

## COUNT TWO
### Breach of Contract – Failure to Pay Continuing Fees and Advertising Fees

47.     One Hour incorporates by reference the preceding paragraphs as if fully set forth herein.

48.     The Franchise Agreements between One Hour and Zubiate are valid and enforceable contracts.

49.     One Hour has performed all conditions precedent to secure Zubiate's performance under the Franchise Agreements.

50.     Due to Zubiate's failure to accurately report its Net Sales, Zubiate has breached the Franchise Agreements by failing to pay the contractually required amounts of Continuing Fees and Advertising Fees.

51.     One Hour has been damaged by Zubiate's breaches of the Franchise Agreements in an amount exceeding $75,000, exclusive of interest, costs, and attorneys' fees with the precise amount to be determined at trial.

**COUNT THREE**
**Breach of Contract – Noncompete Covenants**

52.     One Hour incorporates by reference the preceding paragraphs as if fully set forth herein.

53.     The Franchise Agreements between One Hour and Zubiate are valid and enforceable contracts.

54.     One Hour has performed all conditions precedent necessary to secure Zubiate's performance under the Franchise Agreements.

55.     Zubiate breached the Franchise Agreements by using or permitting any part of the One Hour System to be used in connection with another commercial business in which Zubiate has an interest, direct or otherwise, other than the Franchised Business.

56.     Zubiate breached Section 14.1 of the Franchise Agreements by, during the term of the Franchise Agreements, owning or being involved with a Competitive Business (Elmer's) that offers residential air conditioning and heating products and services competitive with or similar to

those offered by One Hour. To the extent that Zubiate's Franchise Agreements have expired, Zubiate has further breached the Franchise Agreements by owning or being involved with a Competitive Business within a period of 24 months after expiration of the Franchise Agreements in violation of Section 14.2.

57.     One Hour has been damaged by Zubiate's breaches of the noncompete covenants in the Franchise Agreements in an amount exceeding $75,000, exclusive of interest, costs, and attorneys' fees with the precise amount to be determined at trial.

**COUNT FOUR**
**<u>Breach of Contract – Owner's Guaranty</u>**

58.     One Hour incorporates by reference the preceding paragraphs as if fully set forth herein.

59.     Defendant Evel Zubiate executed an Owner's Guaranty accompanying each of the four Franchise Agreements between Zubie Air, Inc. and One Hour.

60.     The Owner's Guarantees are valid and enforceable contracts.

61.     One Hour has performed all conditions precedent necessary to secure Zubiate's performance of the Owner's Guarantees.

62.     Defendant Evel Zubiate has breached the Owner's Guarantees by failing to render payment and performance required under the Franchise Agreements due to Zubie Air, Inc's failure to punctually do so, including but not limited to Zubie Air, Inc's obligation to comply with One Hour's audit demands, its failure to pay the contractually required Continuing Minimum Fees and Advertising Fees, and its failure to comply with the covenants not to compete in the Franchise Agreements.

63.     One Hour has been damaged by Defendant Evel Zubiate's breach of the Owner's Guarantees in an amount exceeding $75,000, exclusive of interest, costs, and attorneys' fees with the precise amount to be determined at trial.

64.     Under the Owner's Guarantees, Defendant Evel Zubiate is jointly, severally, and unconditionally liable for any judgment entered by the Court in favor of One Hour.

## PRAYER FOR RELIEF

WHEREFORE, One Hour prays that this Court:

A.     Enter judgment holding that Defendants' conduct violated the terms of the Franchise Agreements.

B.     Enter an order directing Defendants to comply with the audit request of One Hour as required by the Franchise Agreements, including but not limited to producing all financial and business records and all other documents that One Hour deems necessary to perform the audit.

C.     Enter judgment in favor of One Hour for the damages it has suffered as a result of Defendants' conduct, plus prejudgment interest allowed by law.

D.     Award One Hour its attorneys' fees and costs incurred in successfully enforcing the Franchise Agreements.

E.     Award One Hour such other relief in its favor as this Court may deem just and proper.

Dated: March 17, 2023                          /s/ Robert L. Zisk
                                               Robert L. Zisk (D. Md. Bar No. 07147)
                                               LATHROP GPM LLP
                                               The Watergate – Suite 700
                                               600 New Hampshire Avenue N.W.
                                               Washington, D.C. 20037
                                               Telephone: (202) 295-2202
                                               Facsimile: (202) 295-2252
                                               robert.zisk@lathropgpm.com

Jason Johnson (*pro hac vice forthcoming*)
LATHROP GPM LLP
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3000
jason.johnson@lathropgpm.com


*Attorneys for Plaintiff*